UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

ADAM DeMARCO, on behalf of himself
and all others similarly situated,

                            Plaintiff

             -against-                                  04 Civ. 09206 (CM)

NATIONAL COLLECTOR'S MINT, INC.,
AVRAM C. FREEDBURG, and SIDNEY NACHMAN,

                            Defendants.
-------------------------------------------------------------------x

## DECISION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

McMahon, J:

Plaintiff Adam DeMarco has commenced this purported class action against the National Collector's Mint, Sidney Nachman, and Avram C. Freedberg (collectively "Defendants") for Defendants' failure to comply with their obligations under the Hobby Protection Act, 15 U.S.C. § 2101 ("HPA") with regards to their production, marketing, and distribution of a commemorative coin known as the Freedom Tower Silver Dollar. Plaintiff alleges the Defendants failed to mark the Freedom Tower Silver Dollar with the word "COPY," as required for "imitation numismatic items" under the Hobby Protection Act.

Defendants have moved to dismiss Plaintiff's complaints for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) and failure to satisfy the pleading requirements of Fed.R.Civ.P. 8. Plaintiff opposes the motion and cross moves for class certification.

For the reasons stated below, all Defendants' motions are DENIED and Plaintiff's cross

motion is GRANTED. I also deny Defendants' application for bifurcation of the trial into liability and damages phases.

**Facts**

The facts as alleged in the complaint are as follows:

Defendant National Collector's Mint ("NCM") is a Delaware corporation whose principal place of business is in Port Chester, New York. Complaint ("Cplt.") ¶ 5. NCM marketed, sold, and distributed a coin called the Freedom Tower Silver Dollar ("FTSD") throughout the United States. Cplt. ¶ 9.

Sidney Nachman and Avram C. Freedberg are the president and director of NCM respectively. They share a business address withs NCM and are responsible for formulating, directing, and controlling the acts and practices of NCM. Cplt. ¶¶ 6-7.

On or about September 1, 2004, Defendants began to advertise and sell the FTSD for $23.45 per coin plus shipping and handling. Cplt. ¶¶ 9, 15-16. Defendants advertised the FTSD as a "coin" made from .999 pure silver that had been "recovered from Ground Zero." Cplt. ¶ 14. Defendants also stated that the coin had been "legally authorized" and was "government issue." Cplt. ¶ 11. The FTSD is stamped with the phrases, "In God We Trust", "One Dollar", and "We Will Never Forget" surrounding an image of the World Trade Center on one side and the design for the Freedom Tower project on the other. Cplt. ¶¶ 12-13.

Plaintiff is a resident of Burlington County, New Jersey. Cplt. ¶ 4. He purchased the coin from Defendants after seeing a television advertisement that promoted the FTSD as a legally authorized, government-issued silver dollar that commemorated the September 11, 2001 attacks on the World Trade Center. Cplt. ¶¶ 4, 9, 11.

Plaintiff alleges the FTSD is an "imitation numismatic item" as defined under the "HPA" and should have been marked "COPY" as per the HPA. Cplt. ¶¶ 19-20. Plaintiff claims that by advertising the FTSD as a "coin," and "legally authorized" and "government issue," Defendants engaged in unfair and deceptive practices in commerce in violation of the Federal Trade Commission Act. Cplt. ¶ 21. Plaintiff further asserts that Defendants had knowledge of these violations of law but have failed to remedy those violations and have persisted in this illegal conduct. Cplt. ¶¶ 40-41.

Plaintiff seeks certification of a nationwide class consisting of himself and all other purchasers of the FTSD. He seeks both injunctive and monetary relief.

**Standards**

Dismissal of a complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is proper where "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Harris v. City of New York, 186 F.3d 243, 247 (2d Cir.1999). The test is not whether the plaintiff is ultimately likely to prevail, but whether he is entitled to offer evidence to support his claims. Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir.1998). The court assumes that all factual allegations in the complaint are true, and draws all reasonable inferences in the plaintiff's favor. EEOC v. Staten Island Sav. Bank, 207 F.3d 144, 148 (2d Cir.2000).

"In considering a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), a district court must limit itself to facts stated in the complaint *or in documents attached to the complaint as exhibits or incorporated in the complaint by reference.*" Kramer v.

Time Warner, Inc. 937 F.2d 767, 773 (2d Cir. 1991) (Emphasis added). I do so limit myself and ignore any additional material that were included in the motion papers but not attached to the complaint. Because the text of the FTSD advertisement is quoted in the complaint, the advertisement itself may be considered without converting the motion to one for summary judgment. Id.

A motion to dismiss a complaint for failure to satisfy the pleading requirements pursuant to Fed.R.Civ.P. 8 will only be granted if the plaintiff's complaint lacks a "short and plain statement of the claim showing that the pleader is entitled to relief." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (quoting Rule 8(a)(2)). A complaint need not state the legal theory, facts, or elements underlying the claim except in certain instances and the complaint should be considered very liberally with dismissal based on Rule 8 occurring only for egregious shortcomings. Phillips v. Girdich, No. 04-0347PR. 2005 WL 1154194, at *2-3 (2d Cir. May 17, 2005).

**Discussion**

**The Hobby Protection Act**

The HPA was designed to protect hobbyists and collectors from being defrauded by unscrupulous individuals and corporations that marketed and/or distributed imitation numismatic items. It is a consumer protection statute, and so, like all other consumer protection statutes, it should be liberally construed. Johnson v. Riddle, 305 F.3d 1107, 1117 (10th Cir. 2002) (the court quoting Congressional Committee hearings "found that debt collection abuse by third party debt collectors is a widespread and serious national problem . . . as such is should be construed liberally in favor of the consumer"). See 15 U.S.C. § 1692(e); Harrison v. NBD Inc.,

-4-

968 F.Supp. 837, 844 (E.D.N.Y. 1997) (Court held because the Fair Debt Collection Practices Act is a remedial statute, it should be construed liberally in favor of the consumer); Belmont v. Associates National Bank, 119 F.Supp. 2d, 149, 159 (E.D.N.Y. 2000) (The Truth in Lending Act, 15 U.S.C. § 1601(a) is a remedial act whose "purpose . . . [is] to protect the consumer against inaccurate and unfair credit billing and credit card practices" and, as such, "its provisions are to be construed liberally in favor of consumers."); Ellis v. General Motors Acceptance Corp., 160 F.3d 703, 707 (11th Cir. 1998) (holding the Truth in Lending Act is remedial legislation which should be "construed liberally in order to best serve Congress' intent."); Begala v. PNC Bank, Ohio, Nat'l Ass'n, 163 F.3d 948, 950 (6th Cir. 1998), cert. denied, 528 U.S. 868, 120 S.Ct. 166, 145 L.Ed.2d 141 (1999) ("[the Truth in Lending Act] is a remedial statute and, therefore, should be given a broad liberal construction in favor of the consumer."); N.C. Freed Co. v. Board of Governors of Fed. Reserve Sys., 473 F.2d 1210, 1214 (2d Cir. 1973) (holding that because "[the Consumer Credit Protection Act] is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated."); Macdonado v. Collectibles Intern., Inc., 969 F. Supp 7, 8 (S.D.N.Y. 1997) ("Generally, statutes promoting the public good are liberally construed." N.Y.Stat. § 341 (McKinney 1971)).

At the time of the HPA's enactment, over three million people in the United States collected numismatic items. See Justin Dingfelder, The Hobby Protection Act, Fed. Bar. J. Vol. 33:55 (1975). "Of this number, approximately 150,000 are sophisticated, experienced collectors capable of readily identifying replicas, while the majority of collectors have a casual interest in numismatics and related items and are unable to discern an original from an expertly produced copy." Id. The clear intent of the HPA is to protect consumers from being deceived into

believing they are buying items that are original numismatic items (i.e. real money, minted by the United States Government) when, in fact, they are buying copies of money.

The HPA provides a private right of action against any person who:

Manufactures in the United States, or imports into the United States, for introduction into or distribution in commerce any numismatic item which is not plainly and permanently marked "COPY". [Such action] is unlawful and is an unfair or deceptive act or practice in commerce under the Federal Trade Commission Act. 15 U.S.C. § 2101(b).

The act defines an "imitation numismatic item" as "an item which purports to be, but in fact is not, either (1) an original numismatic item, **or** (2) a reproduction, copy, or counterfeit of an original numismatic item." 16 C.F.R. § 304.1(d) [emphasis added]. An "original numismatic item" is defined as "anything which has been a part of a coinage or issue which has been used in exchange or has been used to commemorate a person, object, place, or event." 16 C.F.R. § 304.1(f). Original numismatic items can include coins, tokens, paper money, and commemorative medals.

**Defendants' Rule 12(b)(6) Motion**

The only two cases known to this court to have been litigated under the Hobby Protection Act were argued before the Federal Trade Commission. Thus, this is a case of first impression, not only in this court, but (apparently) in any court.

Defendants claim that the FTSD does not qualify as an "imitation numismatic item" within the ambit of the HPA because it does not purport to be a reproduction or counterfeit of a real coin. They note - correctly - that the FTSD is not an exact replica of any existing or prior products or coins. According to Defendants, there has never been a real United States silver dollar that depicts the Twin Towers on one side and the proposed Freedom Tower. Defendants thus claim that the FTSD "looks <u>nothing</u> like U.S. legal tender," Defendants' Reply

Memorandum of Law in Support of Their Motion to Dismiss the Complaint at p. 4 (March 11, 2005) ("Defendants' Reply Memorandum") and cannot be subject to the HPA as an imitation numismatic item. Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Complaint (February 3, 2005) ("Defendants' Memorandum to Dismiss").

But defendants construe the HPA too narrowly. They ignore the fact that the term "imitation numismatic item" includes not only reproductions or counterfeits of existing coins, but also any item that "purports to be, but in fact is not, an original numismatic item." 16 C.F.R. § 304.1(d). The FTSD falls within the ambit of the statute because it "purports to be, but is not, an original numismatic item." Id. The FTSD purports to be a legally authorized, government-issued silver dollar. However, the Complaint alleges that the FTSD is neither legally authorized nor government-issued, and is certainly not a "silver dollar," which is U.S. legal tender. See Cplt.. ¶ 9. The Complaint further alleges that Defendants have shored up the FTSD's claim to be "legally authorized" and "government-issued," by stamping on the coin the phrases "In God We Trust" and "One Dollar" (Cplt ¶¶ 12-13). These phrases that are required by law to appear on all United States legal tender. See Attached Exhibit C in Plaintiff's Declaration in Opposition to Defendants' Motion to Dismiss the Complaint as to all Defendants and in Support of Plaintiff's Cross Motion for Class Certification (February 19, 2005). These characteristics of the FTSD might not fool a sophisticated coin collector, who would know that only the United States Government can mint a coin, but they could lead an unsophisticated purchaser to believe the FTSD was indeed legal tender issued by the Government. Therefore, the Complaint alleges that the FTSD purports to be an original numismatic item but is not. That makes it an imitation numismatic device. Defendants' argument that the coin is not a reproduction of a real

Government-minted coin reads half the definition of that term out of the statute.

Defendants also argue that the Court cannot grant this motion (at least, not without converting it to a motion for summary judgment) because Plaintiff relies on its advertisements in opposing the motion, and the advertisements are not part of the complaint. Because the advertisements are quoted and adverted to in the complaint, Defendants are wrong. See Kramer, *supra.*, 937 F.2d at 773. However, one need not look at the exhibits submitted in opposition to the motion in order to conclude that Plaintiff has sufficiently stated a claim for relief. The Complaint alleges that the Freedom Coin is an imitation numismatic item as defined at 15 U.S.C. § 2106 and 16 C.F.R. § 304.1. Complaint ¶ 19. It pleads, as set forth above, numerous characteristics of the FTSD that make it appear to be a real silver dollar. And the complaint specifically alleges that the FTSD coins were not marked "COPY" as required by 15 U.S.C. § 2101(b). Cplt. ¶ 20. Drawing all reasonable inferences in favor of plaintiff, EEOC, *supra,* 207 F.3d at 148, the Complaint sufficiently alleges that the FTSD purports to be legal U.S. tender when it is not. Thus, assuming, as Fed.R.Civ.P. 12(b)(6) dictates the Court must, that all Plaintiff's stated facts are true, there is a basis upon which Plaintiff may be entitled to relief.

The Rule 12(b)(6) motion is DENIED

**Defendants' Rule 8 Motion**

Defendants assert that Plaintiff's Complaint is "merely a recitation of language in the Hobby Protection Act and contains insufficient facts to put the defendants on notice of the claims against them as required by Federal Rule of Civil Procedure 8." Defendants' Dismissal Memo at 16. Defendants claim that the Complaint does not identify a single specific act by any of the defendants, does not allege any facts that support an HPA claim, improperly groups the

defendants, and does not inform the defendants of the nature of the claims against them.  Id.

A motion to dismiss a complaint for failure to satisfy the pleading requirements pursuant to Fed.R.Civ.P. 8 will only be granted if the plaintiff's complaint lacks a "short and plain statement of the claim showing that the pleader is entitled to relief." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (quoting Rule 8(a)(2)).  Plaintiff satisfied the rule when he described the FTSD's many similarities to a real coin and alleged that the FTSD was not properly marked "COPY" and therefore violated the HPA.  Cplt. ¶¶ 20-21.

The Second Circuit has recently held, "*All* complaints must be read liberally; dismissal on the pleadings *never* is warranted unless the plaintiff's allegations are doomed to fail under any available legal theory." Phillips, *supra*, at 2.  This is an incredibly lenient standard. Defendants' contention that this Complaint fails to meet it is belied by Defendants' own motion to dismiss. Apparently, they were able to discern enough about what they were alleged to have done wrong to respond to the motion to dismiss with a 19 page brief and exhibits.  The Rule 8 motion is DENIED – indeed, it is denied as frivolous.

**Plaintiff's Cross Motion for Class Certification**

Plaintiffs seek to certify a class of purchasers of the FTSD coin.  Plaintiff defines the proposed class as:  All residents of the United States who purchased a Freedom Tower Silver Dollar from defendants between September 1, 2004 and the present.  Cplt. ¶ 22.  Plaintiff neglects to state whether he is seeking class certification under Rule 23 (b)(2) or Rule 23(b)(3), but explains that certification would be appropriate under either rule.

The standards for determining a motion for class certification are well settled and require little discussion.  For a court to certify a class under Rule 23(b)(2), it must conclude that "the

party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Federal Rules of Civil Procedure 23(b)(2). For a court to certify a class under Rule 23(b)(3), it must conclude that the prerequisites to class action status as set forth in Rule 23(a) are met, as well as the standards specific to Rule 23(b). In brief, the court must conclude all of the following:

Under Rule 23(a):

    1) the class is so numerous that joinder of all members is impracticable;

    2) there are questions of law or fact common to the class;

    3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

    4) the representative parties will fairly and adequately protect the interests of the class.

Under Rule 23(b):

    1) the prosecution of separate actions by or against individual members of the class would create a risk of

        A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

        B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

    2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

    3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the

controversy.

Here, plaintiff argues that certification pursuant to either Rule 23(b)(2) or (b)(3) would be apppropriate.

**Rule 23(a)**

  **Numerosity**

In the present instance, the numerosity requirement is met. "Generally courts will find a class sufficiently numerous when it comprises 40 or more members." Petrolito v. Arrow Financial Services, LLC, 221 F.R.D. 303, 309 (D.Conn. 2004) (citing Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993); Ansari v. New York Univ., 179. F.R.D. 112, 114 (S.D.N.Y 1998) (stating "[n]o minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrated that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met.") Plaintiff has attached as evidence e-mails from forty-three people claiming to have purchased the FTSD and wishing to join the suit. Attached Exhibit A in Plaintiff's Declaration in Opposition to Defendants' Motion to Dismiss the Complaint as to all Defendants and in Support of Plaintiff's Cross Motion for Class Certification (February 18, 2005). It is undisputed that thousands of FTSD's were sold. Given such facts, the numerosity requirement is met.

  **Commonality**

The commonality requirement is satisfied if plaintiffs' complaints share a common question of law or fact. See Fed.R.Civ.P. 23(a)(2). It is not necessary that all of the questions raised by arguments are identical; it is sufficient if a single common issue is shared by the class. Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147, 155 (2d Cir. 2001); Trief v. Dun &

Bradstreet Corp.; 144 F.R.D. 193, 198 (S.D.N.Y. 1992); Fox v. Cheminova, Inc., 213 F.R.D. 113, 126 (E.D.N.Y. 2003). Or, as this court previously held, "Rule 23(a)(2) does not require the plaintiffs to demonstrate that the class members' claims are identical; rather, it demands that the disputed issue of law or fact 'occup[ies] essentially the same degree of centrality to the named plaintiffs' claim as to that of the other members of the proposed class.'" Dodge v. County of Orange, 208 F.R.D. 79, 88 (S.D.N.Y. 2002) (quoting Krueger v. New York Tel. Co., 163 F.R.D. 433, 442 (S.D.N.Y. 1995)). In the current case, the class shares common questions of law or fact as all purchased the exact same coin and are suing under the same act. See Cplt. ¶ 28. The commonality requirement is therefore satisfied.

**Typicality**

The typicality requirement of Rule 23(a)(3) is satisfied "if the claim of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members." Marisol A. v. Giuliani, 929 F.Supp. 662, 691 (S.D.N.Y. 1996), aff'd, 126 F.3d 372 (2d Cir. 1997); Robinson, supra, 267 F.3d at 155. Since each member of the class purchased the same product, is suing under the same act, and likely desire the same relief (an injunction against the Defendants, monetary restitution for the price of the FTSD, and compensatory damages), the typicality requirement is satisfied.

**Adequacy of Representation**

Under Fed.R.Civ.P. 23(a)(4), the adequacy of representation requirement is satisfied if the Plaintiff's attorneys are qualified, experienced, and generally able to conduct the litigation; and the Plaintiff does not have interests antagonistic to those of the proposed class. See Fed.R.Civ.P. 23(a)(4). The Plaintiff's attorneys have combined to litigate at least seventeen

class actions suits along with a multitude of other consumer and defective product suits. Plaintiff's Memorandum of Law in Support of Motion for Class Certification at pp. 12-13 (February 19, 2005). Defendants do not contest the qualifications of plaintiff's counsel. Moreover, the named Plaintiff has exactly the same interests as the rest of the class in obtaining relief from Defendants. On these facts, the adequacy of representation requirement is satisfied.

The question then becomes whether plaintiff has met the requirements of either Rule 23(b)(2) or (b)(3). In fact, he has met both.

**Rule 23(b)(2)**

Rule 23(b)(2) permits certification of a class when the class is seeking injunctive or declaratory relief. Fed.R.Civ.P. 23(b)(2). Here, the class is seeking a declaration that Defendants are engaged in an unfair trade practice under the Federal Trade Commission Act and the HPA and an injunction against further sales of the FTSD. The class also seeks money damages equal to the amount each member of the class spent on their purchases of FTSDs.

The fact that the class seeks money damages is not enough to take it out of the ambit of Rule 23(b)(2). In Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147 (2d Cir. 2001), the Second Circuit Court held that classes seeking injunctive relief and *incidental* monetary damages may proceed under Rule 23(b)(2). "Incidental" was defined by the court as having the ability to be "comput[ed] by means of objective standards and not dependent in any significant way on the [class members'] intangible, subjective differences." Robinson, 267 F.3d at 164 (citing Robinson v. Metro-North Commuter R.R. Co., 197 F.R.D.85, 88 (S.D.N.Y. 2000). (quoting Allison v. Citgo Petroleum Corp., 151 F.3d 402, 415. (5th Cir. 1998)).

In this case, the damages sought are incidental to the injunctive and declaratory relief.

-13-

They damages can be easily computed. The FTSD was marketed for $23.45. Everyone who bought the coin from Defendants paid that sum. The number of coins sold is readily ascertainable. Multiplying $23.45 by the number of coins sold yields the damages incidental to the alleged violation. The class meets the requirements of Rule 23(b)(2).

**Rule 23(b)(3)**

"In order to meet the predominance requirement of Rule 23(b), a plaintiff must establish that the issues in the class action that are subject to generalized proof, thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." In re Visa Check/Mastermoney Antitrust Litigation v. Visa U.S.A., Inc. and Mastercard Int'l, Inc., 280 F.3d 124, 136 (2d Cir. 2001) (citing Rutstein v. Avis Rent-A-Car Sys., Inc., 211 F.3d 1228, 1233 (11th Cir. 2000)). The predominance requirement is similar, but "more stringent" and "far more demanding" than the commonality requirement of Rule 23(a). Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 631, 117 S.Ct 2231, 138 L.Ed.2d 689 (1997). Rule 23(b) also states class certification should only be granted if is superior to other methods for achieving fair and efficient adjudication of an issue. Fed.R.Civ.P. 23(b).

This case presents the classic law school example of a Rule 23(b)(3) class action. The claims asserted by the each member of the class are exactly the same. Cplt. ¶ 30. Each member of the class purchased one or more FTSD(s) and seeks relief under the HPA. Cplt. ¶¶ 22, 35. The issue of whether the Defendants marketed, distributed, and sold imitation numismatic items not marked "COPY" predominates. The amount of money each member of the class is suing for is so small that is it unlikely that any individual would be able to maintain a lawsuit to obtain redress.

Defendants' arguments against class certification are all based on the merits of the Plaintiff's case, rather than the requirements of Rule 23. "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974) (quoting Miller v. Mackey Int'l, Inc., 452 F.2d 424, 427 (CA5 1971)). As the Defendants have not offered any arguments against class certification and the class meets all of the Rule 23 requirements, the class is hereby certified.

The question of which rule to certify under is of some importance. If the class is certified under Rule 23(b)(3), plaintiff will be required to give notice and permit potential class members to opt out. If the class is certified under Rule 23(b)(2), however, no notice will be required at this time.

Where, as here, defendants are alleged to have committed a massive consumer fraud in violation of federal law, I conclude that plaintiff's prayer for injunctive and declaratory relief against that fraud means that the class should be certified under Rule 23(b)(2).

Defendants have asked that, if I certify a class, I bifurcate the issues of liability and damages at trial. This is not a case for bifurcation, because compensatory damages can be readily computed and are not highly individualized. The Court of Appeals in Visa Check did not bifurcate, despite the existence of individualized damages issues, because the Court recognized that damages could be calculated with the aid of a class-wide formula. See Visa Check, *supra*, 280 F.3d at 141. Here, there are no individualized issues, because every class member paid the same amount for his FTSD. The only "individualized" issue is how many FTSDs each member of the class purchased. Thus, bifurcation would merely add an unnecessary step to what is a

same amount for his FTSD. The only "individualized" issue is how many FTSDs each member of the class purchased. Thus, bifurcation would merely add an unnecessary step to what is a relatively simple lawsuit. Defendants' request for bifurcation is DENIED.

**Conclusion**

For the foregoing reasons the Defendants' motion to dismiss per Rule 12(b)(6) is DENIED, the Defendants' motion to dismiss per Rule 8 is DENIED, and the Plaintiff's motion to certify the class per Rule 23 (b)(2) is GRANTED.

This constitutes the decision and order of the Court.

Dated: June 30, 2005

_____
U.S.D.J.