UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
―――――――――――――――――――――――x

ADAM DeMARCO, on behalf of himself
and all others similarly situated,

        Plaintiff,                                  04 Civ. 9206 (CM)

       -against-

NATIONAL COLLECTOR'S MINT, INC.,
a Corporation doing business in New York and
throughout the United States, AVRAM C.
FREEDBURGH, individually, and SIDNEY
NACHMAN, individually,

        Defendants.

―――――――――――――――――――――――x

## DECISION AND ORDER APPROVING SETTLEMENT AND POSTPONING AWARD OF ATTORNEYS' FEES TO PLAINTIFF'S COUNSEL

McMahon, J.:

       On November 19, 2004, plaintiff filed in this Court a one count class action complaint, alleging that defendants violated the Hobby Protection Act, 15 U.S.C. § 2101(b), in the manufacture and marketing of a commemorative numismatic item known as the Freedom Tower Silver Dollar (FTSD) – a misnomer, since the item is not a silver dollar, or any other form of legal tender. Plaintiff alleged that the item should, by law, have been marked "copy," but was not. Defendants sold over 132,000 of these "coins" between September 1, 2004 and May 31, 2005.

       It is necessary to understand the history behind the filing of this action.

       On September 10, 2004, shortly after the FTSD went on sale, the United States Mint issued an advisory informing the public that the FTSD was "not a legally authorized government-issued coin." The New York Times printed an editorial to this effect on September 22, 2004.

       On October 12, 2004, the New York State Attorney General brought an action against National Collector's Mint (NCM), seeking to enjoin the sale of the FTSD and to obtain restitution for those who had purchased the item, as well as civil penalties. This action became public the following day.

On October 15, 2004, plaintiff filed a putative class action in the Superior Court of the State of New Jersey, alleging common law claims in connection with the issuance and advertising of the FTSD.

The Attorney General's action was settled almost as soon as it was filed. Pursuant to that settlement, NCM undertook a court-ordered restitution program, in which it offered persons who purchased or placed orders for FTSDs as of October 13, 2004 an opportunity to obtain a full refund, including shipping and handling costs, or to cancel their pending orders.

On November 22, 2004 – after the settlement of the Attorney General's action was announced, and immediately after the filing of the instant complaint – the New Jersey class action was voluntarily dismissed.

On February 3, 2005, defendants filed a motion to dismiss this action on the ground that the FTSD was not covered by the Hobby Protection Act. Plaintiff cross-moved for class certification. This court denied defendant's motion and granted plaintiff's in an opinion dated June 30, 2005.

Since the issuance of that opinion, the parties have been engaged in settlement discussions. They have reached a proposed settlement pursuant to which NCM will provide a refund to all members of the class who choose to return their FTSDs to NCM. The Class consists of all persons in the United States who purchased the Freedom Tower Silver Dollar from National Collector's Mint, Inc., during the time period running from September 1, 2004 through May 31, 2005, and who have not received a refund from National Collector's Mint, Inc. for their purchase(s) of the Freedom Tower Silver Dollar. The class is so defined in order to exempt from participation anyone who took advantage of the restitution program ordered by the New York State Supreme Court in the Attorney General's action. The definition of the class means that some persons who rejected the original offer for a refund will have a second opportunity to turn in their FTSDs and obtain a refund. The class period here, of course, is far longer than the period covered by the settlement of the Attorney General's action. However, at least some of these new class members were advised of the AG's settlement and offered a chance to cancel their orders. How many of those persons will take advantage of this second refund offer, and give up their coins in exchange for getting their money back, remains to be seen.

The Stipulation of Settlement provides that NCM will pay attorneys' fees and expenses as awarded by the Court. In other words, class counsel fees will not be deducted from the refunds given to class members. To the extent that a provision in the Settlement Agreement advises members of the class that this Court could decide to "reduce the amount of the refund to the Class in awarding attorneys' fees and expenses"(language that, ironically, was included at the behest of plaintiffs and was objected to by NCM), the Court hereby advises the parties that it has no intention of taking a dime from the members of the class to pay counsel fees or expenses.

NCM has executed a Conditional Confession of Judgment, which is being held in escrow as a potential sanction to ensure compliance with the terms of conditions of the Settlement Stipulation, including the payment of attorneys' fees. The Confession of Judgment may be turned

into a judgment only after determining that NCM has materially breached the Stipulation and failed to cure within ten days following notice of the breach.

Plaintiff's counsel has filed a motion seeking nearly $2.7 million in attorneys' fees. Counsel's theory is that the Confession of Judgment creates a common fund of $8 million, of which they are entitled to a one-third share.

Defendant opposes plaintiff's counsel's request. It acknowledges that fees are awardable in this action pursuant to the fee-shifting provision of the Hobby Protection Act, 15 U.S.C. §2102, but argues that the fee should be measured using a "lodestar without enhancement" approach. City of Burlington v. Dague, 505 U.S. 557, 562 (1992); Grant v. Martinez, 973 F.2d 96, 101 (2d Cir. 1992). Indeed, defendant argues that "lodestar without enhancement" is strongly presumed to be the appropriate fee in this Circuit, and urges that, on the peculiar facts of this case, no enhancement is warranted.

Defendant also urges that any final fee award be deferred until the Court knows how many refunds are requested and how many hours class counsel spend in administering the refund program, as evidenced by contemporaneous billing records. NCM contends that it would be impossible to judge the reasonableness of an attorneys' fee award in relation to the benefit conferred by the settlement without knowing how many class members avail themselves of the settlement opportunity. And it distrusts class counsel's estimate of how many hours they will spend administering the settlement, because it is based on a much greater response to the Settlement notice than the Attorney General received in his reimbursement program.

### 1. The Settlement is Approved

Both parties urge that the settlement be approved, and I indicated at the argument on the motion my intention to approve the settlement. Once the Court ruled on the scope of the Hobby Protection Act, the violation of law was plain. The refund program agreed upon by the parties gives all purchasers of FTSDs – some for the second time (because they were offered the chance to participate in the AG's settlement, but declined) – an opportunity to return their coins to defendant and get their money back, including the cost of returning the coin to NCM. The remedy fits the violation and no class member is prejudiced. The settlement is fair, reasonable and adequate. It was the product of arms' length negotiations. The remedy not only falls within a "*range* of reasonableness," In re American Bank Note Holographics, Inc. Sec. Litig., 127 F. Supp. 2d 418, 428 (S.D.N.Y. 2001)(emphasis added), it *is* reasonable in light of the attendant risks of further litigation. While those risks for the class are not great on the merits (and while the risk of being found guilty of the violation are virtually 100% for NCM), the class did face a significant risk a large number of class members might have been found to have suffered no injury, since they had a previous opportunity to obtain redress for any fraud perpetrated on them and turned it down. Whether defendants would have prevailed on their "no injury" argument is irrelevant – it is not a trivial argument, and by settling, class counsel secured something of value for all the members of the class.

I do not intend to get into an argument with either side about whether the benefit

conferred by the settlement is substantial (as class counsel argue) or "tangible yet limited" (as defendants' counsel assert). This settlement, in the opinion of the Court, affords the members of the class the best possible outcome. It is approved.

## 2. Class Counsel's Request for a $2.7 Million Fee is Rejected

One thing can be resolved quickly – indeed, I have already resolved it orally. Class counsel is not getting $2.7 million in fees, or anything close to it.

First and foremost, this is not a common fund case. A key element of a common fund case is that fees are not assessed against the unsuccessful litigant in some sort of fee shifting arrangement, but rather are taken from a fund created for the payment of class claims. In this case, notwithstanding the language about what this Court could or might do that plaintiff inserted into the Settlement Stipulation, NCM has agreed to pay attorneys' fees *separate and apart from the refunds given to class members who choose to participate in the settlement.* The very agreement signed by the parties stipulates that this is NOT a common fund case when it says, "NCM will pay, on behalf of all Defendants, any attorneys' fees and expenses that are awarded by the Court to Class Counsel." (Stipulation of Settlement, ¶ 6). The law on this point is indeed well-settled, as defendants' lawyers state. Savoie v. Merchants Bank, 84 F. 3d 52, 56 (2d Cir. 1996), and cases cited. Notwithstanding, the insertion of language into the Settlement Agreement about what the court "could" choose to do (i.e., ignore the clear terms of the settlement and take the attorneys' fees out of the money that is supposed to be refunded to class members), this Court intends to enforce the settlement reached by the parties. That settlement imposes liability for fees and expenses on NCM directly – not on the refunds to be paid to the class members and not on any fund. Plaintiff's counsel's statement in its brief in support of the motion, to the effect that the class members will receive a 100% refund on their purchase "less any attorneys fees awarded in this case," mischaracterizes the terms of the settlement and is not appreciated by this Court.

The Confession of Judgment did not create a common fund. It did not create fund at all. Rather, it secured NCM's obligation to make restitution to those members of the class who ask for it. As long as NCM abides by the terms of the Settlement Agreement (in the opinion of the Court, not of plaintiff or his attorneys), there will be no money judgment entered in the amount of $8 million or anything else. Plaintiff's argument concerning the confession of judgment (which is set out fully in its Reply Brief) is, in a word, specious.

## 3. Class Counsel Are Not Entitled to Any Enhancements on the Lodestar Fee

This Court agrees with defendants that, in a case like this one, lodestar without enhancements is presumptively the reasonable fee. I also agree that this is not a case in which enhancements are warranted.

In the Second Circuit, lodestar without enhancements is the presumptively valid fee when an award is made pursuant to fee-shifting statutes like the Hobby Protection Act. Grant v. Martinez, 973 F.2d 96, 101 (2d Cir. 1992). Moreover, after the Supreme Court's decision in Blum v. Stenson, 465 U.S. 866, 899 (1984), enhancement for contingency is not permitted, and

enhancement for complexity, novelty or quality of representation is disallowed except in the "rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success was exceptional."

This case does not qualify for enhancement.

To say that bringing this action was like shooting ducks in a barrel is something of an understatement. The United States Mint uncovered the fraud being perpetrated on consumers in this case and announced it publicly. Mr. De Marco learned of the Mint advisory and consulted with class counsel on October 8, 2004, about two weeks after information about the Mint advisory first appeared in <u>The New York Times</u>. The New York State Attorney General (AG) commenced a *parens patriae* action four days later, which was three days before class counsel filed their state court class action in New Jersey. Time records show that class counsel were tracking both the AG's action and the Mint's advisories at the time this action was filed and thereafter. The AG's action settled almost as soon as it was filed, for equitable relief that is (for some class members) identical to the relief offered here.

Class counsel insist that they conducted considerable research, especially through the Commercial Investigations firm, prior to the filing of the AG's action. Indeed they did. I have reviewed the report of Commercial Investigations. It appears to this Court that counsel's initial "research" consisted of trying to identify who might have a deep enough pocket to warrant suing. I do not fault counsel for making these inquiries, but neither do I think it is the sort of research that qualifies them for an enhancement under the hard-to-meet <u>Blum</u> standard.

Class counsel also insist that they had "no active assistance" from the AG or any other Government agency in the prosecution of this action. I believe them. But I do not believe that this qualifies them for a lodestar enhancement. Moreover, it did not exactly hurt their chances of success when the AG quickly reached a widely-publicized settlement with defendants – a settlement that provided for refunds to consumers of sums paid to purchase the FTSD.

The fact is, both the AG's action and the original New Jersey class action were commenced at about the same time. However, the quick resolution of the AG's action set the stage for the equally quick resolution of this lawsuit.

Class counsel claim that, once they learned of the AG's action, they did research to determine whether the AG had standing to obtain relief for persons who lived outside of New York State. They claim that the naming of the plaintiff in that action as "The People of the State of New York" caused them to believe that the AG was obtaining relief only on behalf of New York residents. That, of course, was not the case.[1]

Much of class counsel's research after they became aware of the AG's action appears to

---

[1] If class counsel do not know that *parens patriae* actions are customarily brought by the AG in the name of The People of the State of New York, they should bone up on their state law.

have been directed to whether they could maintain a viable class action in light of that regulatory action. Class counsel were the first to figure out that the Hobby Protection Act could be relied upon to provide a cause of action collateral to the one maintained by the AG. As a result, they have been able to provide relief similar to that provided by the AG to a larger class of persons. However, there was no need for extensive factual research in order to bring the Hobby Protection Act claim. There was no dispute that the coins were not marked "copy," and there is no suggestion that some coins were while others were not. Thus, either the theory was going to work as to all members of the class or it was not going to work at all. And everyone knew that if this Court accepted their theory that the Hobby Protection Act covered the FTSD, the case was going to settle, while if I did not, the case would have been dismissed. The time expended by class counsel on such matters as interviewing potential class members was, in the final analysis unnecessary.

There was a need for legal research. The issue was novel. But it was hardly brain-taxing. Compensation at a fair and reasonable hourly rate – whatever that may be – should be more than sufficient to reward them for their creativity.

## 4. The Final Lodestar Amount Should Not Be Determined Until the Refunds Have Been Processed

I agree with defendant that the appropriate time to determine the lodestar – and to adjust it, if necessary – is after the settlement has been effectuated, for two reason:

First, I will have an actual tally of hours spent by class counsel in administering the settlement – not simply an estimate. I do not wish to award fees for future work.

Second, I will know how many consumers applied for refunds and how much the settlement was worth to the class.

That said, I have made a few preliminary decisions. I will reduce the fee request to exclude any time expended on the prosecution of the discontinued New Jersey action. Counsel tell me that they learned of the Hobby Protection Act on November 3. This action "began" on that date.

I will also reduce the fee award to eliminate the numerous hours expended on interviewing class members. For the reason outlined above, those hours were of no benefit to anyone and serve only to pad the fees payable.

The hourly rates for Shabel and DeNittis seem high to me for a suburban law firm in this sort of case. They are substantially in excess of the fee requests made by lawyers in the White Plains legal community in comparable class actions. I doubt that New Jersey lawyers charge so very much more than White Plains lawyers, but perhaps they do. If plaintiffs want me to base an award on their stated rates, they will have to come up with some evidence to support such an award to a suburban law firm – not a New York City law firm. By the same token, I will not speculate; if defendants want the hourly rates lowered as much as they say they do, they had

better come up with evidence of hourly rates awarded to suburban law firms in class action consumer protection suits.

    Of course, if counsel wish to come to some sort of accommodation among themselves on fees, and those fees appear reasonable in light of these rulings, I will entertain their suggestion.

    This constitutes the preliminary decision and order of the Court.

Dated: January 19, 2006

                                                                                    U.S.D.J.

BY FAX TO ALL COUNSEL